(7 Misc. Rep. 677.)

### HAMILTON et al. v. COOGAN et al.

(Common Pleas of New York City and County, General Term. April 2, 1894.)

CONTRACTS—INTERPRETATION.

> Where a building contract provides that the contractor shall receive as compensation the cost of labor and material used in the building, "and 10 per cent. added thereto as profit," the amounts paid by the contractor on subcontracts for various portions of the work, including the customary profits of the subcontractors, will be considered as "the cost of labor and material" in estimating the amount due to the contractor.

Appeal from special term.

Action by John L. Hamilton and others against James J. Coogan and another to foreclose a mechanic's lien on premises known as 225 and 227 Sixth avenue. From a judgment in favor of plaintiffs for $65,122.83, defendants appeal. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and PRYOR, JJ.

A. & L. Levy, for appellants.

Abner C. Thomas, for respondents.

DALY, C. J. The plaintiffs agreed to erect a building for the defendants, and to receive "for such work as compensation the cost of labor and material used therein, and 10 per cent. added thereto as profit." The plaintiffs did the carpenter work at a cost for labor and materials of $18,193.30, but the other portions of the work they sublet to various contractors, whose bills amount to $93,294.57; and plaintiffs' whole demand was the total of these two sums, being $111,487.87, with 10 per cent. added thereto,— $11,148.78. The defendants resist this claim upon the ground that the bills of the subcontractors include the profits of the latter in addition to the cost of the labor and materials furnished by them respectively, and they instance the subcontract of Wills, for the mason and stone work, in which the plaintiffs agreed to pay Wills the cost of labor and materials, with 10 per cent. added for profit; the very contract which plaintiffs made with these defendants. Wills' charge for labor and materials is $42,250.62, and his 10 per cent. is $4,225.06, making his total bill $46,475.68, upon which plaintiffs claim 10 per cent., or $4,647.56, thus charging defendants with 10 per cent. on the labor and materials of the mason work twice over. The other subcontracts do not present the point of contention as sharply as the Wills contract, but it is indisputable that each contractor has charged, not only what he paid for labor and materials, but his customary profit in addition thereto; and the question for our determination is whether the plaintiffs shall be allowed the amount of these subcontracts as "the cost of labor and material." The plaintiffs contend that defendants themselves have construed their agreement in conformity with the plaintiffs' view by recognizing the employment of subcontractors; having recommended one party to plaintiffs, with a request to give him an opportunity to figure upon the plumbing work, and

having expressed a wish that Wills should do the mason work. Defendants claim that this was not inconsistent with their contract, and in no wise bound them to pay more than the stipulated price, viz. the cost of labor and material.

What is a reasonable construction of the contract must be gathered from the circumstances of the case, the work to be done, and the usages of business as known to both parties. This was a contract for the taking down of an old structure, excavating for a new one, and erecting a large and costly building, which required the co-operation of a number of different trades, and the whole work was to be completed within a comparatively short period. The custom of apportioning building work among persons engaged in the several trades was known to and recognized by defendants, and is so generally understood that, unless the contrary appears, we must consider that the parties entered into this contract with the understanding that that course was to be pursued. It is not pretended that defendants understood that the plaintiffs were masters of all mechanical crafts, or were to attempt to erect the building without the assistance of experts in the several trades; that they were to purchase material at first cost, hire the laborers, and produce a completed structure, the mechanical execution of which, in every department, should be as perfect as if each department had been under the charge of competent contractors. It is more reasonable to conclude that what the parties intended by the cost of labor and material was the actual charge of the several contracting mechanics for the portion of the work done by each, and his profit upon what he paid his workmen, and the price of the material they used, as it represented the necessary expenses of supervision and skill in directing and performing the work in a workmanlike manner, and the maintenance of facilities for the proper performance of his contract. Thus, Wills' 10 per cent. represented his own supervision over the mason work, the proportional expenses of his shop, employes, etc., and was as much a part of the actual cost of labor and materials as the wages of his foreman; and was necessary in order that the mason work should be executed by a competent expert in that trade. Were the plaintiffs to go into the market and purchase material, they would still be paying a profit to the dealers, and yet it cannot be pretended that, in order to save this expense to the defendants, they were bound to manufacture such material themselves; and, if they hired laborers and set over them competent superintendents, it would not be contended that they had to pay the compensation of the latter out of their own percentage. The common understanding of the cost of labor and material in the erection of such a structure as was contemplated in the contract of the defendants is the customary charge of contractors for doing such work and furnishing such material. The 10 per cent. to be paid to the plaintiffs was simply a means of confining the whole expense of erecting the building to a certain percentage upon the actual cost of each of the several portions of the work,

and to fix a limit upon the plaintiffs' compensation, and not to provide a novel and extraordinary method of erecting a large building.

In this view of the contract, the case was properly tried, and the evidence developed that the several portions of the work were done at a fair and reasonable price, and that the plaintiffs were entitled to recover as claimed. No error is pointed out by the exceptions which require a new trial. The court correctly ruled that, as between the contractor and the owner of the property, the lien was effected when the proper notice was filed, and is not affected by the failure to serve notice of claim upon the owner. Kenney v. Apgar, 93 N. Y. 539; Kelly v. Bloomingdale, 139 N. Y. 343, 34 N. E. 919. The case of Furniture Co. v. Squier, 2 Misc. Rep. 438, 21 N. Y. Supp. 972, does not hold the contrary. The decision in that case concerned only the insufficient verification of the notice. The judgment is affirmed, with costs. All concur.